UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HARRY LEE RICHARDSON | CIVIL ACTION NO. 14-cv-2833 |
| VERSUS | JUDGE HICKS |
| N. BURL CAIN | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish judge, after a bench trial, convicted Harry Lee Richardson ("Petitioner") of aggravated rape and sentenced him to a mandatory life sentence. The conviction was affirmed on appeal. State v. Richardson, 71 So.3d 492 (La. App. 2d Cir. 2011), writ denied, 86 So.3d 615 (La. 2012). Petitioner then filed a post-conviction application in state court, followed by this federal petition for habeas corpus relief. For the reasons that follow, it is recommended that his petition be denied.

**Background Facts**

One night in May 1994, two men broke into the home of an 83-year-old Shreveport woman and raped her. The victim was rendered unconscious during the attack, and the men were gone when she awoke. Police determined that the men entered the house where a window screen and panes had been removed. A fingerprint was collected from the window, and fluids were collected from the victim and her clothing. No suspects were developed, and the case went cold.

Thirteen years later, in 2007, DNA samples from the case were run through an FBI database. The search indicated a match with a Shreveport man named Rodney Washington. A detective determined that Washington and Petitioner had been involved in a similar attack four blocks from the victim's home, just two months after the attack on the victim. The two men had pleaded guilty to aggravated burglary in that case. The detective examined the fingerprint taken from the window of the victim's home and matched it to Petitioner.

Police interviewed Petitioner, who initially denied involvement. He eventually admitted to breaking into the victim's home with Rodney Washington. He said that Washington alone the committed the rape, but he then said Washington forced him to participate, but he claimed to have only simulated intercourse with the victim. Petitioner admitted, however, that it was possible that he could have penetrated the victim during the simulation.

Washington and Petitioner were charged with aggravated rape. Washington pleaded guilty to a lesser charge of forcible rape and, after being adjudicated a second-felony offender, received an 80-year sentence. Petitioner waived his right to a jury and, after a bench trial before Judge Ramona Emanuel, was convicted of aggravated rape and received a life sentence.

**Claim 1: Denial of Fair Sanity Hearing**

## A. Introduction

Defense counsel filed a motion for appointment of a sanity commission to assess both (1) Petitioner's competency to participate in the proceedings and (2) his ability to discern right from wrong at the time of the crime. Tr. 618. The trial judge appointed two psychiatrists to conduct the examination. Tr. 620. Petitioner was determined to be competent.

Petitioner argues under the heading of claim one that he was denied a fair sanity hearing and the right to cross-examine the psychiatrists because they "never showed up" at the hearing. Petitioner also argues that he was denied the right to present witnesses at the hearing, and he was denied his right to counsel at a critical part of the case. His petition sets forth these claims in a single paragraph and provides no additional factual basis, record citation, or explanation. The record does not support the claims.

## B. State Court Proceedings

Dr. Richard Williams, one of the appointed physicians, filed a written report of his examination of Petitioner. The history that Petitioner gave included growing up in Shreveport, special education, visits to a mental health center, never having a job, and one day a brown envelope with a check started arriving in his mailbox. Petitioner said he believed it was a disability check. Petitioner expressed a pretty good understanding of the legal process and the role of the attorneys and judge, but Dr. Williams said Petitioner "put out little effort and was deliberately uncooperative and dishonest" when, for example, he said he did not know the number of states, the capital of Louisiana, or that this state was

Louisiana. Petitioner also claimed that he did not know what cheese or ice were made from. Dr. Williams concluded Petitioner had the ability to consult with his attorney with a reasonable degree of rational understanding and, at the time of the alleged offense, he was capable of distinguishing right from wrong. Tr. 622-26.

Dr. George Seiden also examined Petitioner. Petitioner told Dr. Seiden that he did not know where he was born and raised, did not know where he grew up, and did not know if he had brothers or sisters. He even said that he did not know his mother's name. He claimed a lengthy history of psychiatric treatment, but he said he was not currently taking medication, and he could not identify any prior medications. Petitioner claimed to be hearing voices during the interview and said he was going to die. He claimed to not know the role of witnesses, a jury, the judge, or the prosecutor.

Dr. Seiden concluded that Petitioner appeared to have some form of mental illness "but is obviously exaggerating the extent of his impairment, both in terms of his psychiatric illness and his intellectual limitations." The exaggeration was so extensive that Dr. Seiden could not render an accurate opinion as to the level of impairment. He offered to supplement his report with regard to competency and sanity if he could review Petitioner's mental health records. Tr. 627-32.

Court minutes indicate that Petitioner was present with counsel on August 10 and 11, 2009 for a sanity hearing at which "evidence was adduced." Tr. 5. The State reports that the hearing was not transcribed because it was not designated part of the record for direct appeal, and the State has been unable to locate any transcript of the proceedings. The minutes show

that the hearing was taken up again on September 8, 2009, and defense counsel moved for another doctor to evaluate Petitioner. Tr. 5. Soon afterward, the State filed a supplemental report from Dr. Seiden, which he prepared after being told that he would receive no additional mental health records for Petitioner because, according to defense counsel, the records were old and had been destroyed.

Dr. Seiden noted in his supplemental report that he had heard Dr. Williams' testimony during the hearing on competence, so he looked to that testimony and Dr. Williams' report for additional information. He noted that Petitioner displayed a much greater understanding of the proceedings when he talked to Dr. Williams than he had presented during Dr. Seiden's interview. It also appeared to Dr. Seiden that, because the mental health records were old, any mental health problems were during childhood and were no longer active in adulthood. Based on the additional information and findings, he opined that Petitioner was competent to assist with the proceedings. Tr. 633-35.

Defense counsel later renewed her motion for appointment of a third physician to the sanity commission, and the request was granted. Tr. 6. This resulted in a joint report by Dr. Marc Colon, a forensic psychiatrist, and Dr. John Turpin, a forensic psychiatry fellow, who concluded that Petitioner had the capacity to understand the proceedings and assist in his defense. During an interview, Petitioner gave answers that indicated an understanding of the proceedings, possible verdicts or outcomes, and the role of court personnel. He could recall and relate facts, and he gave his version of the incident. The physicians noted that Petitioner was vague and very slow to respond to even the simplest questions during much of the

evaluation, but he became much more interested and forthcoming when the discussion turned to the actual charges, defense, and circumstances of the alleged crime. They determined that he was both competent for trial and that there was "nothing to suggest that his mental status at the time of the alleged offense would have been compromised due to mental illness." Tr. 638-42.

The hearing continued on March 8, 2010. Counsel stated that the new report had been filed, and the prosecutor and defense counsel agreed to submit the matter on the written report. Judge Emanuel read the final report and found that Petitioner was "competent to proceed based on the totality of all the reports." Tr. 792.

Petitioner first complained about the adequacy of his hearing in his post-conviction application. The argument in the application was no more detailed than the paragraph offered in his federal petition. Petitioner stated that he had to rely on his memory and could not fully address his claims because he lacked a complete copy of the trial record. (His efforts to obtain a copy of the trial record were the subject of a number of other filings.)

The trial court issued a written opinion that generally noted Petitioner's claim that he was denied due process and a fair trial. The opinion did not specifically address Petitioner's claims about the competency/sanity hearing, but the court did state that the "grievances are unclear and are not fully developed beyond the point of mere suggestion." The court added that there was "no evidence in the record to support the contentions" raised by Petitioner. Tr. 1293-96. Petitioner filed a writ application with the appellate court, which issued a summary order: "The writ is denied on the showing made." Tr. 1348. The Supreme Court

of Louisiana denied writs without comment on the substantive claims, but it cited a case that stands for the proposition that requests for documents and records may be denied absent a showing of a particularized need. Tr. 1409.

### C. Habeas Analysis

The State argues that Petitioner did not adequately brief this issue in his application to the state appellate court and supreme court to meet the federal exhaustion requirement of 28 U.S.C. § 2254(b)(1)(A). The State makes a related argument that the claim is procedurally defaulted because it is now too late to return to state court and properly exhaust the claim. The court need not reach those procedural defenses because an application may be denied on the merits notwithstanding a failure to exhaust state remedies. 28 U.S.C. § 2254(b)(2). The court may also decline to address a procedural bar defense when the claim fails on the merits. Glover v. Hargett, 56 F.3d 682, 684 n.1 (5th Cir. 1995); Hood v. Cockrell, 72 Fed. Appx. 171, 183 (5th Cir. 2003) .

If the claim was not properly exhausted, and thus not adjudicated on the merits in state court, then this court would review it de novo. In re Paredes, 587 Fed. Appx. 805, 814 (5th Cir. 2014). If the claim were exhausted and adjudicated on the merits in the state court, then habeas relief is available only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

This demanding standard applies "even where there has been a summary denial." Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) , quoting Yarborough v. Alvarado, 124 S.Ct. 2140 (2004).

Although a full transcript is not available, the minutes indicates that there was a live hearing at which evidence was heard over the course of two days. Dr. Seiden mentions in his letter that he listened to the testimony of Dr. Williams, which undermines Petitioner's unsupported claim that neither psychiatrist showed up for the hearing. The minutes and available transcripts all show that Petitioner was represented by counsel during the entire course of the proceedings, and there is not a scrap of evidence to support his claim that he was denied the right to cross-examine the psychiatrists. Everything in the record weighs against Petitioner's conclusory assertions. There is no basis to disagree with the state court's rejection of this group of claims, even under a de novo standard of review.

**Claim 2: No Jury Instructions on Sanity Defense**

Petitioner represents that he pleaded not guilty and not guilty by reason of insanity. He argues that his trial counsel was ineffective for not insisting that the jury be given instructions on the insanity defense, which Petitioner describes as an issue of whether he was "competent at the time of the offense." Petitioner also faults appellate counsel for not raising this issue on appeal.

The State argues that Petitioner did not properly exhaust these claims, leading to a procedural bar, and that they lack merit. The claims can most easily be resolved for lack of merit.

The record indicates that Petitioner did not plead not guilty by reason of insanity. Rather, he entered a plea of not guilty. Tr. 1. And there was no jury to be instructed; Petitioner waived his right to a jury and elected a bench trial. Tr. 796-97. The ineffective assistance of trial and appellate counsel claims must, therefore, fail. There was no insanity defense, and there was no jury to instruct. Furthermore, the psychiatric reports did not indicate that there was a valid basis for an insanity defense.

**Claim 3: Not Subpoenaing Psychiatrists for Trial**

Petitioner complains that he was denied the right to a fair trial when his attorney did not subpoena a psychiatrist for trial to be questioned on whether Petitioner was "competent" at the time of the offense. Competency regards the capacity to understand the proceedings and assist with one's defense. La. C. Cr. P. art. 641. Sanity is a defense based on a mental disease or defect at the time of the offense that rendered the offender incapable of distinguishing between right and wrong with reference to the conduct in question. La. R.S. 14:14. The defendant who pleads insanity has the burden of proving the affirmative defense by a preponderance of the evidence. La. C. Cr. P. art. 652

Testimony from the psychiatrists would not have been admissible because Petitioner entered an ordinary not guilty plea. "When a defendant is tried upon a plea of 'not guilty', evidence of insanity or mental defect at the time of the offense shall not be admissible." La.

C. Cr. P. art. 651. None of the psychiatrists who examined Petitioner believed he was insane at the time of the crime, so there was no evidence on which counsel could have mounted such a defense.

The state court denied this ineffective assistance claim on the merits. The federal court cannot grant habeas relief unless that decision was not only incorrect but an unreasonable application of the general standard of Strickland v. Washington, 104 S.Ct. 2052 (1984). Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009). There is no basis under that doubly deferential standard to question the state court's rejection of this claim.

**Claim 4: Conflict of Interest**

Petitioner's final claim states only that he "contends that a conflict between him and his court-appointed counsel before and during trial constitutes a denial of effective assistance of counsel" in violation of the Fourteenth Amendment. Petitioner's memorandum never explains a factual basis for the claim. The State pointed to the lack of explanation in its brief. Petitioner filed a reply, but he did not even mention this claim.

Petitioner included this claim in his post-conviction application. The state trial court denied it on the merits. The State argues that the claim was not sufficiently presented in the appellate proceedings to properly exhaust it, but that need not be addressed. The claim is plainly lacking in merit given the complete lack of factual explanation. The state court's decision was reasonable.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus relief be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the

denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 15th day of May, 2017.

Mark L. Hornsby
U.S. Magistrate Judge